DUCKER, JUDGE:
Claimant, Paul W. Dixon, of Route 1, Elk Garden, West Virginia, alleges originally damages in the sum of $1,880.70 and by amendment in the sum of $126,419.56, resulting from sodium chloride (salt) stocked and piled by respondent on premises near claimant’s property situate near the intersection of U. S. Route 50 and Elk Garden Road, in Elk District of Mineral County, West Virginia, which stockpiled salt seeped into the claimant’s artesian well, ruined the water therein and deprived the claimant of safe drinking and satisfactory water for his business, which business consisted of a tavern, bar, dance hall, filling station, and garage. The tavern designated as Skyline Inn had in addition to its dance hall a bar with two bathrooms, kitchen, stock and utility room, bedroom and a third bathroom. Claimant alleges damage to much of the plumbing by reason of erosion caused by the salt content in the water, and that he suffered irreparable losses of business and mental suffering. Claimant alleges a total of $46,000.00 for loss of business, $30,000.00 for mental suffering, $20,000.00 for loss of an artesian well, and $15,000.00 for loss of drinking water and water for domestic purposes. The remainder of the claim is principally for expenses incurred in replacing pipe, plumbing, fixtures and appliances.
The respondent denied the claimant’s allegations and relied primarily on the testimony of one witness, James E. Rosencrance, a chemist of the West Virginia Department of Health. His testimony was to the effect that the report of the water test taken in the case related principally to the amount of chlorides in the water, and not *82 simply sodium chloride which is salt. He admitted that while chlorides do accelerate corrosion, that he “would be more interested to find out where the acid (in this water) is coming from”.
The salt which was stockpilled by the respondent for use on the roads in winter was in an old shed-like building with no adequate flooring and with more or less open sides, apparently greatly exposed to the weather and poorly retained in the building provided for it. From the evidence we can only conclude that it was allowed to escape onto the adjoining and other nearby land, and that as testified to by several witnesses, the claimant’s water was seriously affected. However, the fact that the respondent was so negligent in storing or stockpiling the salt, did not relieve the claimant of his duty in the matter. When he found himself so damaged or injured in the use of his premises, it was his duty, we think, to minimize his damages. Even though he may have complained to the respondent about this matter, he permitted this situation to continue and took only the minimal action to remedy the solution, namely, hauling water to supply his needs.
We cannot look with favor upon or give credence to the exorbitant and fantastic figures contained in the claimant’s items of loss of business profits and mental suffering. There is no substantial proof of loss of business profits, and even if there were such evidence, it would be inadmissible here as speculative. There are too many factors in any attempt to prove any such loss. It is hardly reasonable to think that anyone with a business which had as substantially potential profit as alleged by claimant would allow it to disintegrate, when at relative small costs the salt situation could have been remedied. Nor do we consider mental suffering or worry on the part of the claimant as having any base for the consideration of damages in this matter.
We are of the opinion, however, that because of the respondent’s negligent act of improperly stockpiling and storing the salt, the claimant has suffered specific items of damage which could have been eliminated by the claimant if he had incurred such costs and which he still can eliminate by making reasonable expenditures therefor. He could have had another well dug and a pipe line two thousand feet in length installed, which as shown by the evidence would have cost $500.00 for a well and $4,000.00 for 2,000 feet of pipe at $2.00 per foot. The estimates of costs of specific items of plumbing including labor and materials slightly exceed the sum of $2,000.00, although *83 the evidence in this regard is not the best; we realize that it is sufficiently substantial for a finding by this Court to the effect that this part of the claim should be allowed to the extent of $2,000.00.
Considering all the evidence, we are of the opinion to and do hereby award the claimant the total sum of $6,500.00.
Award of $6,500.00.